Matter of Karen Q. v Christina R. (2020 NY Slip Op 03442)





Matter of Karen Q. v Christina R.


2020 NY Slip Op 03442


Decided on June 18, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 18, 2020

529257

[*1]In the Matter of Karen Q., Petitioner,
v
Christina R., Appellant, and David Q., Respondent. (And Another Related Proceeding.)

Calendar Date: May 21, 2020

Before: Egan Jr., J.P., Mulvey, Aarons, Pritzker and Colangelo, JJ.


Christopher Hammond, Cooperstown, for appellant.
John A. Cirando, Syracuse, for respondent.
Citizens Concerned for Children, Inc., Ithaca (Kathleen Sullivan of counsel), attorney for the child.



Egan Jr., J.P.
Appeal from an order of the Family Court of Tompkins County (Cassidy, J.), entered May 1, 2019, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Respondent Christina R. (hereinafter the mother) and respondent David Q. (hereinafter the father) are the parents of a child (born in 2008). Petitioner (hereinafter the grandmother) is the child's paternal grandmother. In June 2012, the parties initially consented to an order that granted joint legal custody and physical placement of the child to the father and the grandmother, and provided parenting time for the mother. In July 2013, the mother successfully petitioned Family Court for an increase in her parenting time. Thereafter, in August 2017, following a fact-finding hearing and a Lincoln hearing, Family Court again modified the parties' prior custody order continuing the award of joint legal custody and primary physical placement of the child with the father and the grandmother, but reduced the mother's scheduled parenting time to Wednesday from 4:00 p.m. to 7:00 p.m. and alternate Saturdays from 10:00 a.m. to 5:00 p.m. Family Court's August 2017 order was affirmed by this Court (Matter of Karen Q. v Christina R., 170 AD3d 1446 [2019]).
In February 2018, the grandmother commenced a modification proceeding seeking to further reduce the mother's parenting time with the child. Prior to the initial appearance on the grandmother's petition, the attorney for the child filed an order to show cause to temporarily reduce the frequency of the mother's parenting time pending resolution of the grandmother's modification proceeding, and Family Court thereafter issued an interim order temporarily reducing the mother's parenting time to alternate Saturdays from 12 p.m. to 2:30 p.m. Following a June 2018 preliminary conference, Family Court granted the parties leave to conduct discovery and, in July 2018, the mother filed a petition seeking sole legal and physical custody of the child and, subsequently, filed discovery demands on both the father and the grandmother. The father and the grandmother responded, claiming said demands were untimely and, following the mother's motion to compel discovery, Family Court denied same.
Following a fact-finding hearing and a Lincoln hearing, Family Court dismissed the mother's custody petition and granted the grandmother's modification petition, providing the father and the grandmother with continued joint legal and primary physical placement of the child, while further reducing the mother's parenting time, in accord with its previously issued interim order, to alternating Saturdays from 12:30 p.m. to 2:30 p.m. Said order further provided that the father and the grandmother "will not deny any reasonable request for additional non-overnight time by the mother once per month, for up to three additional hours, if [the mother] has a plan for some special activity with [the child]." The mother appeals.[FN1]
Initially, the mother contends that Family Court erred in denying her motion to compel discovery. In a Family Ct Act article 6 proceeding, Family Court has broad discretion to determine the scope of discovery and proof to be adduced at the fact-finding hearing (see Matter of Ryan v Nolan, 134 AD3d 1259, 1262 [2015]; Matter of Stukes v Ryan, 289 AD2d 623, 624 [2001]). Family Court's preliminary conference order specifically mandated that all discovery be completed within 20 days before trial. The mother's discovery demands were not served until July 26, 2018 and, therefore, said demands were not served within adequate time to allow both the father and the grandmother to timely respond within 20 days of the September 4, 2018 fact-finding hearing, as required by Family Court's preliminary conference order (see generally CPLR 3133 [a]; 2103 [b] [2]). Accordingly, the mother's motion was properly denied.
Turning to the merits, the mother contends that Family Court's custody and visitation order is not supported by a sound and substantial basis in the record. A party seeking to modify an existing custody order bears the initial burden of demonstrating a change in circumstances since entry of the prior order that, if established, warrants inquiry into the best interests of the child (see Matter of Jacob WW. v Joy XX., 180 AD3d 1154, 1155 [2020]; Matter of Richard L. v Kristen M., 174 AD3d 968, 969 [2019]). Although the mother does not explicitly challenge Family Court's determination that the grandmother established the requisite change in circumstances, we nevertheless find that, given the testimony of the child's mental health provider regarding his concern with the continued deterioration of the relationship between the mother and the child, the adverse effect that the existing visitation arrangement was having on the child's mental and emotional well-being, as well as other evidence indicating that the mother continues to make inappropriate and disparaging remarks to the child regarding the father and other family members, we find support in the record demonstrating such a change in circumstances, thereby triggering a best interests analysis (see Matter of Quick v Glass, 151 AD3d 1318, 1319-1320 [2017]; Matter of Opalka v Skinner, 81 AD3d 1005, 1006 [2011]).
To that end, "[i]n determining the best interests of the child, Family Court must consider factors including the parents' past performance and relative fitness, their willingness to foster a positive relationship between the child and the other parent, as well as their ability to maintain a stable home environment and provide for the child's overall well-being" (Matter of Sabrina B. v Jeffrey B., 179 AD3d 1339, 1340 [2020] [internal quotation marks and citations omitted]). Although a child's wishes are entitled to significant weight in rendering a determination with respect to the child's best interests, said wishes are not dispositive (see Matter of Michael Q. v Peggy Q., 179 AD3d 1329, 1332 [2020]; Matter of Lorimer v Lorimer, 167 AD3d 1263, 1265-1266 [2018], appeal dismissed and lv denied 33 NY3d 1040 [2019]). Ultimately, "[t]he propriety of visitation is left to the sound discretion of Family Court, guided by the best interests of the child, and its decision will not be disturbed where it is supported by a sound and substantial basis in the record" (Matter of Jemar H. v Nevada I., 182 AD3d 805, 807 [2020] [internal quotation marks and citations omitted]).
The evidence at the hearing established that, despite the modified parenting schedule that Family Court put in place as part of its August 2017 order, the mother and the child's relationship nevertheless has continued to deteriorate with the child becoming increasingly agitated, anxious and stressed prior to scheduled visitations with the mother and often becoming visibly upset thereafter. The child's therapist, a licensed mental health counselor, testified that he has been seeing the child for approximately three years, most recently on a biweekly basis, with the focus of such treatment being developing a healthy relationship and communications between the child and the mother. The therapist opined that, despite continued treatment, the child has been "emotionally harmed" as a result of her interactions with the mother and the mother's inappropriate comments during parenting time. He voiced concerns regarding the mother's apparent indifference during visitations, citing the amount of time that she spends on her phone while the child plays with the mother's younger son; however, he noted that, following implementation of Family Court's April 2017 interim order limiting the mother's parenting time, the child has appeared less stressed with respect to visitations.
The father and the grandmother also testified regarding the anxiety and nervousness that the child exhibits regarding her visitations with the mother, as well as their concerns regarding the mother's continued hostility toward and derogatory remarks made regarding the father and other family members. Following one particular visit, the grandmother recounted that the child was hysterically crying after the mother had made comments to her insinuating that a sore in her mouth had been caused by her inappropriately kissing the father. On another occasion, the mother allegedly threatened to punch the grandmother should she escort the child to the mother's door for a scheduled visitation. With respect to the child's continued emotional and intellectual development, the grandmother and the father continue to engage the child in therapy, and the father testified that he takes the child to her medical and mental health appointments, attends all of the child's school events, including parent-teacher meetings and any open houses, and attends her extracurricular activities, such as dance and gymnastics.
The mother denied making derogatory comments to the child regarding the father or other family members and largely blamed any relationship difficulties that she and the child might have on the grandmother and her attempts to alienate the child from her. The therapist, however, indicated that there was no indication that the grandmother or the father had made any attempts to alienate the child from the mother or vice versa. The mother acknowledged that, although she can access the child's educational and medical records, she has not made any efforts to engage with the child's school or the child's medical and mental health providers (see Matter of Heather U. v Janice V., 160 AD3d 1149, 1150 [2018]). Further, other than online shopping, the mother did not set forth any other activities that she engages in with the child during her scheduled parenting time. Additionally, although not dispositive, we note that the attorney for the child supports affirmance of Family Court's order reducing the mother's parenting time and, contrary to the mother's assertion, we do not find that Family Court gave undue weight to the child's preferences (see Matter of Michael Q. v Peggy Q., 179 AD3d at 1332). Notably, although Family Court's order further reduced the mother's parenting time, it appropriately provided the mother with the opportunity to plan and engage in more meaningful and appropriate activities with the child that would enable her to not only increase her parenting time each month, but also hopefully strengthen her relationship with the child should she choose to take advantage of such opportunities. Accordingly, upon review and giving deference to the findings and credibility assessments of Family Court, we find a sound and substantial basis in the record to support Family Court's determination.
Mulvey, Aarons, Pritzker and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The grandmother has not filed a brief or otherwise participated in this appeal.