Matter of Karl II. v Maurica JJ. (2022 NY Slip Op 05905)

Matter of Karl II. v Maurica JJ.

2022 NY Slip Op 05905

Decided on October 20, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 20, 2022

533837
[*1]In the Matter of Karl II., Appellant,
v
Maurica JJ., Respondent. (And Three Other Related Proceedings.)

Calendar Date:September 7, 2022

Before:Clark, J.P., Aarons, Pritzker, Reynolds Fitzgerald and Ceresia, JJ.

Aidala, Bertuna & Kamins, PC, New York City (Michael DiBenedetto of counsel), for appellant.
John Ferrara, Monticello, for respondent.
Betty J. Potenza, Highland, attorney for the child.

Pritzker, J.
Appeal from an order of the Family Court of Ulster County (Anthony McGinty, J.), entered August 10, 2021, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the unmarried parents of a child (born in 2014). By order entered upon consent in March 2020, the parties shared joint legal custody of the child, with the mother having primary physical custody in Virginia — where she resides — subject to specified parenting time awarded to the father, who resides in Ulster County. Notably, although the parties were to consult with one another "regarding any and all major medical, educational, and/or religious decisions involving the child," the mother was granted final decision-making authority if the parties could not reach an agreement. Approximately two months after entry of this order on consent, in May 2020, the father commenced the first proceeding, seeking emergency custody of the child based upon concerns for her safety. Thereafter, in July 2020, the father filed a family offense petition, which resulted in a temporary order of protection prohibiting the mother from using corporal punishment against the child. The following month, the father filed a second family offense petition claiming violations of that temporary order of protection. In September 2020, Family Court granted an "emergency petition for a writ of habeas corpus" filed by the mother after the father failed to return the child at the end of his summer parenting time in New York.
Following a five-day virtual fact-finding hearing on the consolidated petitions, Family Court, among other things, dismissed the father's request for sole custody of the child, finding that the father had not established a change in circumstances. However, the court sua sponte determined that the parties' breakdown in communication regarding the child warranted a modification of the prior custody order. As such, the court modified the custody order by awarding the mother sole legal and physical custody of the child while affording the father with the same visitation schedule delineated in the prior custody order.[FN1] The father appeals.[FN2]
"The father, as the party seeking modification of a prior custody order, had the threshold burden of showing a change in circumstances since the entry of that prior order so as to trigger an examination as to whether modification would serve the child's best interests" (Matter of Joshua KK. v Jaime LL., 204 AD3d 1345, 1346 [3d Dept 2022] [citations omitted]; see Matter of Jahleel SS. v Chanel TT., 201 AD3d 1172, 1173 [3d Dept 2022]). As a change in circumstances, the father alleged in the petition that the mother struck the child, which constituted neglect, and that the mother failed to provide proper medical care and adequate supervision. We agree with Family Court that the proof at the hearing [*2]failed to establish that the child had been neglected in the mother's care.
At the hearing, there was significant testimony regarding the cause of scratches and bruises sustained by the child because the father sought to establish that the mother had subjected the child to excessive corporal punishment. However, the record discloses that the child gave differing accounts as to how she sustained the bruising and marks. First, the child told a doctor in New York [FN3] that the mother had caused the bruising and that the child's grandfather had caused the scratches during rough play with her.[FN4] The child then told a family services specialist with the Department of Social Services in Virginia, during a virtual meeting with the father, his fiancÉe and the child, that the mother had caused the injuries, but only after receiving coaching by the fiancÉe. The child then told a caseworker with child protective services in New York that it was both the mother and the half sibling who had hit her in the arm, but there was no explanation as to other marks on her body.[FN5] These varying and opposing accounts fail to disclose whether the mother in fact hit the child and, if so, to what extent and under which circumstances. Moreover, the mother testified that she only punished the child by way of timeouts and taking away privileges, which was corroborated by other testimony. In view of the foregoing, the father failed to sufficiently prove that the child sustained the injuries by virtue of the mother's hitting or that that the child had been subjected to excessive corporal punishment, or any physical discipline for that matter, sufficient to establish a change in circumstances (compare Matter of John VV. v Hope WW., 163 AD3d 1088, 1090 [3d Dept 2018]; Matter of Andrew S. v Robin T., 145 AD3d 1209, 1211-1212 [3d Dept 2016]; Matter of Festa v Dempsey, 110 AD3d 1162, 1162-1163 [3d Dept 2013]).[FN6]
We do, however, agree with the father that Family Court erred in determining that the parties being unwilling or unable to cooperatively raise the child constituted a change in circumstances and sua sponte modifying the prior order.[FN7] Initially, the parties did provide some evidence as to how each has failed to properly communicate with respect to the child, such as the father being unresponsive to the mother's messages regarding child support payments and the mother failing to inform him that she had unenrolled the child from daycare. However, the mother acknowledged that the father has been able to communicate with her via the TalkingParents app to discuss issues regarding the child, such as custodial exchange dates. The father similarly stated that he has been able to communicate with the mother via email. Thus, although their communication is strained at times, partially as a result of these proceedings, the record does not establish that it has completely broken down (see Matter of David JJ. v Verna-Lee KK., 207 AD3d 841, 844 [3d Dept 2022]; see generally Matter of Kanya J. [*3]v Christopher K., 175 AD3d 760, 763 [3d Dept 2019], lvs denied 34 NY3d 905, 906 [2019]). Indeed, "[t]he record establishes that the parties' relationship was no more antagonistic during [the relevant time] period than it was at the time of the entry of the original order" (Matter of Risman v Linke, 235 AD2d 861, 862 [3d Dept 1997]), which, in this case, was only two months prior to the filing of the father's petition. Accordingly, Family Court should not have proceeded to a best interest analysis and, instead, should have continued the joint legal custody arrangement reflected in the prior order (see Matter of Dornburgh v Yearry, 124 AD3d 949, 950-951 [3d Dept 2015]; Matter of Daniels v Guntert, 243 AD2d 891, 892-893 [3d Dept 1997]).
Clark, J.P., Aarons, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as awarded sole legal and physical custody of the child to respondent; it is directed that the parties shall have joint legal custody of the child with respondent having primary physical custody and petitioner having parenting time as set forth in Family Court's order entered March 27, 2020; and, as so modified, affirmed.

Footnotes

Footnote 1: Family Court also allowed the mother to apply for counsel fees expended as part of her habeas corpus petition and dismissed the father's family offense petitions for failure of proof. These parts of the order are not challenged on appeal and, therefore, the father has abandoned any such challenges (see Matter of Paul Y. v Patricia Z., 190 AD3d 1038, 1040 n 2 [3d Dept 2021]; Matter of Disidoro v Disidoro, 81 AD3d 1228, 1228 [3d Dept 2011], lv denied 17 NY3d 705 [2011]).

Footnote 2: The father moved for a stay pending appeal, which motion this Court granted to the extent of providing that the provision granting sole legal custody to the mother is stayed and the parties shall share joint legal custody as provided in the March 2020 order pending the determination of the appeal (2021 NY Slip Op 71327[U]).

Footnote 3: The father's fiancÉe brought the child to this doctor while the child was visiting the father.

Footnote 4: Notably, the grandfather had been ordered to stay away from the child.

Footnote 5: The father also argues that Family Court erred by excluding other statements made by the child both to him and his fiancÉe as to the source of her injuries, finding them to be uncorroborated hearsay. Inasmuch as the father failed "to point to any additional documentary or testimonial proof in support of [the] . . . unsubstantiated allegations" of abuse (Matter of Jennifer B. v Mark WW., 159 AD3d 1087, 1089 [3d Dept 2018]), and "mere repetition of an accusation will not suffice" (Matter of Leighann W. v Thomas X., 141 AD3d 876, 878 [3d Dept 2016] [internal quotation marks and citations omitted]), we discern no error in Family Court excluding this testimony.

Footnote 6: Additionally, Family Court properly concluded that one instance of the child being diagnosed with irritant dermatitis and candidiasis did not constitute medical neglect and, similarly, that one instance of the mother leaving the child home with her 11-year-old half sister while the mother briefly went to a neighbor's house did not constitute inadequate supervision.

Footnote 7: The mother had not filed a petition seeking this relief.